IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| U.S. TRANSPORT, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  08-1403-MLB |
| | ) | |
| RANDOLPH TORLEY and | ) | |
| R A TRANSPORT, LLC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This case comes before the court on defendants' motion for summary judgment (Doc. 68) and plaintiffs' motion for summary judgment on defendants' counterclaims (Doc. 66).  The motions have been fully briefed and are ripe for decision.  (Docs. 67, 69, 74, 77, 79, 81, 83, 84).  Defendants' motion is granted and plaintiffs' motion is granted in part and denied in part for the reasons set forth herein.

I.  **Summary Judgment Standards**

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the

claim." <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); <u>see also</u> <u>Adams v. Am. Guarantee & Liab. Ins. Co.</u>, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing <u>Adler</u>).  The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be <u>material</u>.  <u>See</u> <u>Renfro v. City of Emporia</u>, 948 F.2d 1529, 1533 (10th Cir. 1991).

A defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. <u>See</u> <u>Adler</u>, 144 F.3d at 670.  Because a plaintiff bears the burden of proof at trial, a defendant need not "support [its] motion with affidavits or other similar materials <u>negating</u> [a plaintiff's]" claims or defenses.  <u>Celotex</u>, 477 U.S. at 323 (emphasis in original). Rather, a defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of a plaintiff's claim.  <u>See</u> <u>Adler</u>, 144 F.3d at 671 (citing <u>Celotex</u>, 477 U.S. at 325).

If the defendant properly supports its motion, the burden then shifts to the plaintiff, who may not rest upon the mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Mitchell v. City of Moore, Okla.</u>, 218 F.3d 1190, 1197-98 (10th Cir. 2000).  In setting forward these specific facts, the plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  <u>Adler</u>, 144 F.3d at 671.  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. <u>See</u> <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 533 (10th Cir.

1994).   A  plaintiff  "cannot  rely  on  ignorance  of  facts,  on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988).  Put simply, the plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Certain local rules further govern the presentation of facts and evidence.  Local Rule 56.1 requires the movant to set forth a concise statement  of  material  facts.   D. Kan. Rule 56.1.   Each  fact  must appear  in  a  separately  numbered  paragraph  and  each  paragraph  must refer with particularity to the portion of the record upon which the defendant relies. See id.  The opposing memorandum must contain a similar statement of facts.  The plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he or she relies and, if applicable, state the number of the defendant's fact that he or she disputes.  The court may, but is not obligated to, search for and consider evidence in the record that would  rebut  the  defendant's  evidence,  but  that  the  plaintiff  has failed to cite. See Mitchell, 218 F.3d at 1199; Adler, 144 F.3d at 672.  All material facts set forth in the statement of the defendant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the plaintiff. See id.; Gullickson v. Sw. Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah).

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must

-3-

be admissible.  See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted).  For example, hearsay testimony that would be inadmissible at trial may not be included.  See Adams, 233 F.3d at 1246.  Similarly, the court will disregard conclusory statements and statements not based on personal knowledge.  See Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge).  Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e).  See FED. R. CIV. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2722 (2d ed. 1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

II.  FACTS

Statements made in either parties' memoranda that are not supported with citations to the record have not been included in the

court's recitation of the facts.   See D. Kan. Local R. 7.6 ("Each statement of fact should be supported by reference to the record in the case."); 56.1(a) ("facts . . . shall refer with particularity to those portions of the record upon which the movant relies"); 56.1(b) (same requirement for opposing memorandum).

In addition, statements made in the parties' memoranda that are supported only by reference to an unauthenticated exhibit have not been included in the recitation of facts.   See D. Kan. Local R. 56.1(d) ("All facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answer to interrogatories and responses to requests for admissions.").

As a result of the court's standing order, the argument of the parties that is included within the parties' factual statements has been wholly ignored.   See Revised Standing Order, available at http://www.ksd.circ10.dcn/chambers/showjudge.php?juegeid=13 (click on "Standing Order"), at ¶ 1.E. ("Statements of uncontroverted fact shall cite only facts.  Responses to statements of uncontroverted fact shall cite only controverting facts.  Argument and the drawing of inferences shall be reserved for the authorities and argument section of the memorandum.").

Finally, except as noted, the court has disregarded the identical affidavits of Mike and Steve Nelligan which are almost entirely conclusory, lacking in personal knowledge and unsupported personal opinion.   See paragraphs 2, 5-18, 20, 21 and 23 of each affidavit.

### General Factual Background

Plaintiffs and defendant RA Transport are trucking companies. In 1999, defendant Randolph Torley entered into a contract of employment with plaintiff DW Transport.[1] Torley's job title was Vice President and General Manager. Torley's salary was $82,000 but he did not receive his full salary amount during the years he was employed by plaintiffs. In October 2004, Torley executed a Stock Purchase Agreement in which Torley agreed to sell his 11,000 shares of company stock for $22,330. Torley, however, did not immediately receive payment for selling the shares. In December 2005, Steven Nelligan, CEO of plaintiff U.S. Transport, sent Torley a letter in which he stated that Torley would be required to sign a Settlement and General Release Agreement prior to payment being issued. Torley did execute the release on May 10, 2006, after being told that he would not receive a payment under the stock purchase agreement unless he did so.

On October 31, 2006, Torley ended his employment with plaintiffs and began operating a trucking company out of his home. Torley purchased a truck and began contacting potential clients. Torley contracted with Tyson Fresh Meats, a client of plaintiffs, to deliver a load on November 30, 2006. On December 7, Torley contacted Feed Mercantile, Inc., one of plaintiffs' clients, in order to obtain a contract for a load. During his initial weeks in business, Torley contacted Danny Starr, who was employed as head dispatcher for plaintiffs, to request contact information for plaintiffs' clients, although no one can recall which client information was sought by

---

[1] Plaintiffs are successors in interest to Don Ward Transport, Inc.

Torley.  Starr gave Torley that information and also gave out that information to several other truckers who were in competition with plaintiffs.  Starr's practice was to give out the name of the individual to contact but not the actual contact numbers.  Starr does not recall if he gave contact information to Torley for Tyson or Feed Mercantile.

Torley ultimately hired several employees who had previously worked for plaintiffs.  In late 2006, Ronald Rowlands, one of plaintiffs' employees, spoke with Torley about operating a truck for RA Transport, Torley's new company.  In early December 2006, plaintiffs held a Christmas party for their employees.  Torley attended the party even though he was not invited and no longer an employee.  At that party, Rowlands submitted his resignation.  In early 2007, both Starr and Jonell Niles left plaintiffs' employment to work for RA Transport.  With the exception of one employee, all of plaintiffs' employees were at-will and did not have written employment agreements.  Arnie Johnson had a lease contract with plaintiffs; however, the agreement could be terminated at-will by either party.

As Torley expanded his business, he was in direct competition with plaintiffs for customers.  Due to Torley's prior position with plaintiffs, he was aware of the rates that had been previously paid to plaintiffs by its customers.  Danny Starr was also was aware of the customer contacts and rates.  In determining rates for trucking routes, however, the customers usually set the rates they would pay to trucking companies.  During 2007, plaintiffs' business significantly declined and they sustained heavy losses.  Plaintiffs' business declined by more than $1.4 million in Kansas during the years

-7-

2007 and 2008.  Torley's business was increasing and he continued to hire more employees away from plaintiffs.  Plaintiffs eventually closed their business in March 2008.

Plaintiffs filed this lawsuit alleging that defendants tortiously interfered with their contractual agreements and business expectancies.  Torely filed a counterclaim for breach of contract and a claim under the Kansas Wage Payment Act, K.S.A. 44-314.  Plaintiffs move for summary judgment on Torely's counterclaims and defendants move for summary judgment on plaintiffs' claims.

**III. Analysis**

A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules.  See <u>ORI, Inc. v. Lanewala</u>, 147 F. Supp.2d 1069, 1078 n. 9 (D. Kan. 2001). Plaintiffs have alleged tort claims against defendants.  The Kansas Supreme Court has held that the law of the state where the tort occurs controls.  <u>See Lemons v. Lewis</u>, 963 F. Supp. 1038, 1050 (D. Kan. 1997)(citing <u>Linq v. Jan's Liquors</u>, 237 Kan. 629, 635, 703 P.2d 731, 735 (1985)).  All of the tortious acts alleged by plaintiffs occurred in the state of Kansas.   Accordingly, Kansas law controls plaintiffs' claims.  The breach of contract counterclaim alleged by defendant Torley is controlled by Colorado law because the underlying contract sets forth a choice of law provision and no party has asserted that the clause is invalid.

**A.   Defendants' Motion for Summary Judgment (Doc. 68)**

**1.   Tortious Interference with a Contract**

Plaintiffs assert that defendants interfered with the contracts they had entered into with both their employees and their customers.

"The essential elements of a claim for tortious interference with contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." <u>Burcham v. Unison Bancorp, Inc.</u>, 276 Kan. 393, 423, 77 P.3d 130 (2003).

Defendants argue that this claim must fail because plaintiffs are unable to establish the existence of any contracts with their customers and all of their previous employees. Plaintiffs do not directly respond to this allegation nor do they submit any contracts as exhibits to their filings. Instead, and without any citation to authority, plaintiffs assert that at-will relationships can be interfered with and that such a relationship can be the subject of a tortious interference with prospective advantage or contract claim. (Doc. 77 at 19). A claim for tortious interference of a contract requires a contract and a breach. <u>Burcham</u>, 276 Kan. at 423. Plaintiffs have failed to establish both the existence of a contract and that there was a breach of that contract. Moreover, they have additionally failed to show that defendants had knowledge of the contracts, even if they existed.

Because plaintiffs have not established a genuine issue of material fact with respect to the first three elements, defendants are entitled to summary judgment on plaintiffs' claim for tortious interference with contract. <u>Sunlight Saunas, Inc. v. Sundance Sauna, Inc.</u>, 427 F. Supp.2d 1032, 1070 (D. Kan. 2006).

**2.   Tortious Interference with Prospective Business Advantage**

Next, plaintiffs allege that defendants interfered with the relationships with their customers. The essential elements of a claim

for tortious interference with prospective business expectancy are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to plaintiffs; (2) knowledge of the relationship or expectancy by defendants; (3) that, except for the conduct of defendants, plaintiffs were reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendants; and (5) damages suffered by plaintiffs as a direct or proximate cause of defendants' misconduct. <u>Burcham</u>, 276 Kan. at 424.

Both parties spend the majority of their briefing on the fourth element, which requires intentional misconduct by defendants, and may be met by showing defendants acted with "malice, or actual evil-mindedness or specific intent to injure." <u>Triple-I Corp. v. Hudson Assocs. Consulting, Inc.</u>, 713 F. Supp.2d 1267, 1287 (D. Kan. 2010). Generally, the court looks to Restatement (Second) of Torts § 767 to determine if a party's intentional interference is improper. However, when a plaintiff and defendant are competitors, as in this case, the court must look to the factors set forth in Restatement (Second) of Torts § 768 to determine the propriety of a business competitor's interference with a prospective business relationship. <u>DP-Tek, Inc. v. AT&T Global Info. Solutions Co.</u>, 100 F.3d 828, 832 (10th Cir. 1996)[2]. Under section 768, a party that intentionally

_____

[2] The Kansas Supreme Court has not been faced with the issue of whether to apply section 768 in competitor cases. The Tenth Circuit, in <u>DP-Tek</u>, came to the conclusion that the Kansas Supreme Court would apply section 768. After noticing that neither party discussed the <u>DP-Tek</u> case in their briefing, the court advised the parties of the authority and asked for supplemental briefing. (Doc. 82). Defendants addressed the Tenth Circuit authority and asserted that the court was correct in applying the section 768 factors. Plaintiffs, however,

causes a third person not to enter into a prospective contractual relation with another who is his competitor does not interfere improperly with the other's relation if:

> (a) the relation concerns a matter involved in the competition between the actor and the other;
> (b) the actor does not employ wrongful means;
> (c) his action does not create or continue an unlawful restraint of trade; and
> (d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768.

Defendants contend that plaintiffs are unable to show that defendants employed wrongful means. In DP-Tek, the Tenth Circuit interpreted the wrongful means element of subsection b to require independently actionable conduct. 100 F.3d at 832. "[C]ompetitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relations." Id.

In their supplemental briefing, plaintiffs have only identified one independent action which they could bring against Torley - trespass. (Doc. 84). This "trespass" was allegedly committed when Torley arrived at the Christmas party uninvited. Even if plaintiffs were to establish that Torley committed trespass, they have failed to show that except for the "trespass," they "were reasonably certain to have continued the relationship [with their clients] or realized the

---

disagreed and urge the court to use the factors set forth by the Kansas Court of Appeals in Noller v. GMD3, 13 Kan. App.2d 13 (1988). (Doc. 84). That opinion is not persuasive, however, primarily because it did not concern competitors and was decided eight years prior to DP-Tek. Moreover, and most importantly, this court is bound by the decisions of the Tenth Circuit, especially when, as here, the case involves Kansas law. Plaintiffs not only fail to distinguish DP-Tek, they do not even cite it. (Doc. 84).

expectancy" as required under Kansas law.  <u>Burcham</u>, 276 Kan. at 424.
Plaintiffs did not lose their business to Torley because he went to
their Christmas party uninvited.

Plaintiffs further assert that a variety of actions by defendants
were wrongful; however, they have not clearly identified how that
conduct was independently actionable.  Plaintiffs primarily focus on
how Torley accessed its customer contacts and rate information.
Torley admittedly called Starr and sought information about
plaintiffs' customers.  Starr gave that information to Torley but he
also disclosed that information to other truckers.  Therefore, there
is no evidence that plaintiffs' customer contact information was
confidential.  Moreover, plaintiffs have also failed to establish that
the rate information is confidential as rates are set by the
customers.[3]  Because plaintiffs have not submitted any evidence which
would support a finding that their rate information is confidential,
these allegations cannot support a finding that defendants' actions
in obtaining the information is independently actionable.  See <u>DP-Tek</u>,
100 F.3d at 835-36 ("The record does not support DP-Tek's allegations"
that the prices were confidential because the competitors ask the
clients to disclose the other prices.)

Plaintiffs also assert that Torley bad mouthed their company to
their clients and employees.  Plaintiffs, however, have failed to

_____

[3] Admittedly, Torley was aware of pricing information due to his
position with plaintiffs.  Plaintiffs, however, have not identified
how Torley's use of that information is independently actionable
conduct.  The court is under no obligation to create arguments on
plaintiffs' behalf.  See <u>Phillips v. Hillcrest Med. Ctr.</u>, 244 F.3d
790, 800 (10th Cir. 2001).  Moreover, the court should not raise
issues sua sponte.  <u>Hardiman v. Reynolds</u>, 971 F.2d 500, 502 (10th Cir.
1992).

-12-

submit any evidence of statements made by Torley. Moreover, plaintiffs have not indicated how this conduct would be independently actionable.

Because plaintiffs cannot identify wrongful conduct by defendants which is independently actionable, their claim for tortious interference fails. <u>Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.</u>, 45 F. Supp.2d 1164, 1209 (D. Kan. 1999). Defendants' motion for summary judgment on this claim is therefore granted. (Doc. 68).

**B.    Plaintiffs' Motion for Summary Judgment (Doc. 66)**

Plaintiffs move for summary judgment on Torley's counterclaims for breach of contract and a claim for payment under the KWPA. Plaintiffs assert that Torley's claims are barred under the applicable statute of limitations and as a result of the general release of claims Torley signed in May 2006.

Torely's counterclaims seek payment for wages due under his employment contract for the years 1999 through 2006. Both counterclaims have a three year statute of limitations. <u>See</u> Colo. Rev. Stat. 13-80-101(a); K.S.A. 60-512. Torley acknowledges that the statute of limitations prevents him from prevailing on his claims for the years 1999, 2000, 2001, 2002, 2003, 2004 and the majority of 2005. Torley, however, asserts that the statute of limitations on his claims should be tolled from the time that plaintiffs filed their initial complaint on December 22, 2008. Therefore, any claims prior to December 22, 2005, would be barred. Plaintiffs respond that any claims prior to May 11, 2006, three years prior to the filing of the counterclaims, are barred by the statute.

Torley cites <u>Full Draw Prods. v. Easton Sports</u>, 85 F. Supp.2d

1001 (D. Colo. 2000) to support his position.[4]  <u>Full Draw</u> states that
Colorado law allows for the statute of limitations to toll on
compulsory counterclaims only.  <u>See</u> Colo. Rev. Stat. 13-80-109.
Therefore, the court must first determine whether Torley's claims are
compulsory or permissive.  Compulsory counterclaims "arise[ ] out of
the same transaction or occurrence that is the subject matter of the
opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Any counterclaim
which does not arise out of the same transaction or occurrence as the
opposing claim is a permissive counterclaim. Rule 13(b).

       The Tenth Circuit has adopted four factors in determining whether
a counterclaim "arises out of the same transaction or occurrence" as
the opposing party's claim. <u>See</u> <u>Fox v. Maulding</u>, 112 F.3d 453, 457
(10th Cir. 1997). Specifically, a counterclaim is compulsory if: "(1)
the issues of fact and law raised by the principal claim and the
counterclaim are largely the same; (2) res judicata [i.e., claim
preclusion] would bar a subsequent suit on defendant's claim; (3) the
same evidence supports or refutes the principal claim and the
counterclaim; and, (4) there is a logical relationship between the
claim and counterclaim." <u>Berrey v. Asarco Inc.</u>, 439 F.3d 636, 645
(10th Cir. 2006).

       In this case, Torley's counterclaims are permissive.  The claims
do not raise the same issues of fact and law, res judicata would not
bar Torley's claims, and the evidence to support Torley's claims is

---

       [4] In <u>Full Draw</u>, the court applies Colorado law.  Kansas law,
however, does not allow for the tolling of the statute of limitations
on counterclaims.  <u>See</u> <u>Hatfield v. Burlington N. R. Co.</u>, 747 F. Supp.
634 (D. Kan. 1990).  Therefore, Torley's claim under the KWPA can only
include damages for underpayment after May 11, 2006.  All damages
prior to that date are barred by the statute of limitations.

entirely separate from the evidence needed to support plaintiffs' tort claims.  Finally, the only logical relation between plaintiffs' claims and Torley's counterclaims is that the claims stemmed from the prior employment relationship.   A prior employment relationship is not enough to establish that the claims are compulsory.  <u>Adamson v. Dataco Derex, Inc.</u>, 178 F.R.D. 562, 566 (D. Kan. 1998).

Because Torley's counterclaims are permissive, the statute of limitations is not tolled by the filing of plaintiffs' complaint. Therefore, the date of the filing of the counterclaim controls.  <u>See</u> Colo. Rev. Stat. 13-80-109.  Torley filed his counterclaim on May 11, 2009.  All damages for the alleged breach of contract prior to May 11, 2006, are accordingly barred by the statute of limitations.[5]

Plaintiffs do not put forth any argument concerning Torley's damages on his counterclaims from May 11, 2006, until his termination on October 31, 2006.   Therefore, this portion of Torley's counterclaims will proceed to trial.

## IV. Conclusion

Defendants' motion for summary judgment (Doc. 68) is granted. Plaintiffs' motion for summary judgment (Doc. 66) is granted in part and denied in part.  The clerk is directed to set this case for trial.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.   A motion to reconsider is

---

[5] Plaintiffs' alternative argument - that Torley's claims are waived because of the general release - is moot.  Torley signed the general release on May 10, 2006.  The release only applied to claims prior to the date of the release.  Therefore, Torley did not release any future claims against plaintiffs.

-15-

appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed five pages.  No reply shall be filed.

        IT IS SO ORDERED.

        Dated this   23rd   day of August 2011, at Wichita, Kansas.


                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE